A.C. MUSGRAVE, Jr., Appellant,

v.

Robert OWEN, et al., Appellees.

No. 06–01–00040–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 5, 2001.

Decided Jan. 29, 2002.

Michael E. Starr, McGee, Hommel & Starr, PC, Tyler, for appellant.

David B. Griffith, Griffith Law Firm, PC, Gilmer, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

BEN Z. GRANT, Justice.

A.C. Musgrave, Jr. appeals the granting of a summary judgment in favor of Brookhaven Lake Property Owners Association (Association) and some of the lot owners in the Brookhaven Pines Addition (collectively, the movants), dismissing his claims for declaratory relief regarding certain rights and responsibilities under a restrictive covenant.

Musgrave contends that the court erred in granting summary judgment on the grounds of res judicata. He argues that his claims in this case (Musgrave II) do not arise from the same transaction that formed the basis of the prior case (Musgrave I) and would not have formed a convenient trial unit with the claims in the prior case. Musgrave also argues that summary judgment was improperly granted regarding Pinebrook Properties, Ltd. and its general partner, Pinebrook Properties Management, L.L.C. (collectively, Pinebrook), as those entities never asserted an affirmative claim against the defendants. However, Musgrave suggests that his interests are so intertwined with Pinebrook that if the judgment is reversed against him, it should also be reversed against Pinebrook.

In Musgrave II, Musgrave filed suit against the Association and all the owners of lots in the Brookhaven Pines Addition (lot owners) (collectively, the defendants), seeking several declaratory judgments. The movants asserted counterclaims against Musgrave and added Pinebrook as counter-defendants because of the acquisition of the property in question by Pinebrook. The movants filed a Motion for Partial Summary Judgment against Musgrave and Pinebrook contending that Musgrave II was barred by res judicata. The court signed an order granting partial summary judgment and a partial summary judgment nunc pro tunc clarifying the parties to which the summary judgment applied. The court entered an order severing the partial summary judgment, assigning new cause number 98–420A, and severing the counterclaims of counter-

plaintiffs, consolidating those counterclaims with another cause, and abating the balance of the claims.

In Musgrave II, Musgrave sought (1) a declaration that the defendants may not operate a dump facility on the recreational property owned by plaintiff because the property is subject only to the rights of recreational use by the lot owners; (2) a declaration that Musgrave, as owner of the recreational property, is the sole person authorized to create rules and regulations regarding the use of the recreational property; (3) a declaration that neither the Association nor any lot owner other than Musgrave is authorized to take any action regarding the maintenance, repairs, improvements, modifications, or alterations of the recreational property, including but not limited to the roadways, lake, and dam, without first obtaining Musgrave's consent; (4) a declaration that Musgrave is authorized to install speed control devices across the roadways within the subdivision property for safety purposes; (5) a declaration specifying the nature and extent of Musgrave's obligation, if any, to maintain the roads and lake within the recreational property; (6) a declaration that defendants are not authorized to utilize water in Brooks Lake for any purpose other than recreational purposes, and a further declaration that the current use of water by certain lot owners is unauthorized; (7) attorney's fees; (8) cost of suit; and (9) other entitled relief.

The movants base their claim of res judicata on the proceedings in Musgrave I. Summary judgment proof in Musgrave II consisted only of the final live pleadings and the final judgment in Musgrave I.

Musgrave I was filed by the Association and six individual lot owners (collectively, Musgrave I plaintiffs) against Musgrave and others claiming that a restrictive covenant obligated Musgrave to perform maintenance on the roadways and lake for the benefit of all of the lot owners in the subdivision and requesting (1) permanent injunctions enjoining defendants from closing a roadway, promoting and allowing recreational use of the property by paying customers, and timbering in the recreational areas without following reasonable restrictions to be established by the court, as well as (2) damages to reimburse Musgrave I plaintiffs for funds expended on the maintenance of the roadways and the lake. The Musgrave I plaintiffs asserted that the issue of obligation had been established in a previous suit, *Anderson v. McRae*, 495 S.W.2d 351 (Tex.Civ.App.-Texarkana 1973, no writ), and that Musgrave was barred from denying the obligation by collateral estoppel.

Musgrave presented several counterclaims in Musgrave I seeking (1) a declaratory judgment that he had no affirmative duty to maintain the roadways and lake in the subdivision, claiming the duty did not run with the land, (2) a declaratory judgment that guests of Musgrave's retreat may use the lake and recreational property, asking the court to determine what is necessary for a guest to be considered accompanied by a lot owner, including the maximum number of guests who may use the land at one time, (3) a declaratory judgment that implementation of the Forest Resource Management Plan was a reasonable use of the recreational areas covered by that plan, and (4) a declaratory judgment that Robert Owen's actions in maintaining a water line on Musgrave's property was a violation of Musgrave's property rights.

The Musgrave I plaintiffs asserted special exceptions to Musgrave's counterclaims, arguing that not all necessary parties were present in the suit. There is nothing in the record before us to indicate that the court ruled on these special excep-

tions or that the counterclaims were abandoned. We therefore assume that the counterclaims were live at the time of judgment.

The trial court granted judgment for the Musgrave I plaintiffs permanently enjoining Musgrave (1) from closing the proposed road, (2) from permitting guests of the retreat who were not lot owners to use certain areas, (3) from interfering with the exclusive rights of the lot owners to use the lake, roadways, and hunting and recreational areas in the addition, (4) from timbering for commercial purposes, or (5) from implementing the Forest Resource Management Plan or any similar plan for the commercial harvesting of trees. The judgment also awarded the plaintiffs damages to compensate them for funds expended on maintenance that the court found Musgrave had a duty to perform. The judgment stated that all relief not expressly granted was denied. Therefore, we assume that the counterclaims, although not explicitly mentioned in the judgment, were denied.

This court affirmed the judgment, in part, in *Musgrave v. Brookhaven Lake Prop. Owners Ass'n,* 990 S.W.2d 386 (Tex. App.-Texarkana 1999, pet. denied). We affirmed the trial court's determination that Musgrave was required by the covenants running with the land to maintain the roadways, lake, and recreational property, but reversed injunction (5) above because it referred to a document not made part of the order. We reversed the portion of the award for damages that were barred by the statute of limitations and reformed the award of attorney's fees as excessive.

■ Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Hughes Wood Prods., Inc. v. Wagner,* 18 S.W.3d 202, 205 (Tex.2000). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997). Once the movant establishes entitlement to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989). In reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge every reasonable inference in the nonmovant's favor. *Sci. Spectrum, Inc.,* 941 S.W.2d at 911. We review the summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *See Keever v. Finlan,* 988 S.W.2d 300, 305 (Tex.App.-Dallas 1999, pet. dism'd).

■ The res judicata doctrine of issue preclusion, also known as collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). In order to invoke collateral estoppel, a party must establish that (1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Eagle Props. Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex. 1990).

Although the movants, in their First Amended Answer, argued that Musgrave's claims were barred by collateral estoppel because the issues involved had already been decided in Musgrave I, the question of collateral estoppel is not before us on appeal.

■ The broader res judicata doctrine of claims preclusion prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Compania Financiara Libano v. Simmons*, 53 S.W.3d 365 (Tex.2001). Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *See Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).

■ Res judicata only applies to the cause of action filed by the plaintiff and not to the counterclaim, which might have been filed by the defendant, unless the compulsory counterclaim rule is applicable. *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 281 (Tex.App.-Amarillo 1990, pet. denied). A compulsory counterclaim is defined as any counterclaim (1) within the trial court's jurisdiction, (2) not the subject of a pending action, (3) which is mature when the pleading is filed, (4) arising out of the same transaction or occurrence as the opposing party's claim, and (5) not requiring for adjudication the presence of parties over whom the court cannot obtain jurisdiction. TEX.R. CIV. P. 97(a). However, where a defendant does interpose a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the defendant becomes a counter-defendant for res judicata purposes and is required to assert all claims against the plaintiff arising from the subject matter of the original claim. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex.1992).

■ Texas follows the transactional approach to res judicata, claim preclusion, in determining what claims should have been brought, if they could have been, in a prior action. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630–31 (Tex.1992).

> A final judgment extinguishes the right to bring other suits on the transaction or series of transactions involved in that litigation.... In determining whether the transaction is the same, we consider and weigh whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a trial unit conforms to the parties' expectations or business usage.

*Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 597 (Tex.App.-Texarkana 1994, writ denied). The transactional approach requires courts, in order to determine res judicata, to examine the factual basis, not the legal theories, presented in the cases. *See Kenneco Energy, Inc. v. Johnson & Higgins of Texas, Inc.*, 921 S.W.2d 254, 260 (Tex.App.-Houston [1st Dist.] 1995, writ granted), *modified on other grounds and remanded*, at 962 S.W.2d 507 (Tex.1998). The main concern is whether the cases share the same nucleus of operative facts. *See id.* at 260.

■ Once Musgrave raised a counterclaim in Musgrave I and put himself in the posture of a plaintiff, he was required by both res judicata and TEX.R. CIV. P. 97(a) to bring all mature causes of action arising from the same set of facts and circumstances. *See Dennis v. First State Bank*, 989 S.W.2d 22, 26 (Tex.App.-Fort Worth 1998, no pet.). While Musgrave acknowledges that the claims in both Musgrave I and Musgrave II share a common set of circumstances, including the property, the parties, and the restrictive covenant, he contends that the claims in Musgrave II do not arise from the same transaction as those claims raised in Musgrave I.

■ Where the claims arise from the same accident or seek to recover for the same injuries, they have been found to share the same nucleus of operative facts despite the fact that one claim may require proof of facts not required for the other claim. *See S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 467 (Tex.App.-Corpus Christi 2000, no pet.) (both contract and Stowers claims should have been brought together because both involved same accident and a claim for compensation, requiring only additional showing of negligence for not settling within policy limits); *Getty Oil Co.,* 845 S.W.2d at 802 (involved same transaction as suit arising from same accident, involved same contract provision, and sought same relief as claims in prior action).

■ Where there is a legal relationship, such as under a lease, a contract, or a marriage, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata. *See Weiman v. Addicks–Fairbanks Road Sand Co.,* 846 S.W.2d 414, 419 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (core facts common to all claims regarding continued operation of landfill after lease expired; combining claims would be consistent with achieving comprehensive conclusion to business relationship); *see also Twyman v. Twyman,* 855 S.W.2d 619, 625 (Tex.1993) (resolving both tort and divorce actions in same proceeding avoids two trials based at least in part on same facts; settles in one suit "all matters existing between the parties"); *Robinson v. Garcia,* 5 S.W.3d 348, 350–51 (Tex.App.-Corpus Christi 1999, pet. denied) (both claims should have been tried together as they arose from representation in same case, although distinct injuries and improper conduct were alleged); *but see In re J.G.W.,* 54 S.W.3d 826, 833 (Tex.App.-Texarkana 2001, no pet. h.) (tort claims for personal injury that could have been brought in divorce-custody suit, but were not essentially connected to that action and would only be incidental to the main objective of the court, to determine the best interests of children, not barred by res judicata). Where claims arise at different times through separate transactions not made in the context of a continuing legal relationship, res judicata may not apply even where the parties and subject matter of the transactions are the same. *See Texas Beef Cattle Co. v. Green,* 860 S.W.2d 722, 724 (Tex.App.-Amarillo 1993, writ denied) (involving cattle transactions).

■ Musgrave contends that res judicata does not bar this suit because his claims in Musgrave I do not arise out of the same transaction as those in Musgrave II. However, the subdivision's restrictive covenant constituted a legal relationship between Musgrave, his successors in interest, and the lot owners. Thus, any claim arising from that relationship arises from the same subject matter. Musgrave's claims in Musgrave I involved the denial of the existence of obligations under the restrictive covenant and the determination of the rights of the parties under the restrictive covenant with respect to allowing guests to use the property, timbering, and maintaining a water line. His claims in Musgrave II also seek to determine the rights of the parties under the restrictive covenant, although with regard to different actions: operating a dump facility, regulating use, obtaining consent, installing speed bumps, and using water. As all the claims relate to the restrictive covenant, they arise from the same subject matter and should have been brought in the same action if they were mature at that time.

■ Musgrave also contends that the claims presented in Musgrave II would not have formed a convenient trial unit with the claims in Musgrave I because

they would not have been necessary had he prevailed on his initial defense that he owed no affirmative duties to the lot owners. This argument fails because the contingent nature of claims does not preclude the operation of res judicata. *See Getty Oil Co.*, 845 S.W.2d at 799–800 (relying in part on Tex.R. Civ. P. 51(b), which permits joinder of two claims even when one of the claims is dependent on disposition of other).

Musgrave's argument that inclusion of all his claims in the first suit would not have formed a convenient trial unit because it would have required him to join over 100 lot owners who were not necessary parties to the determination of the claims raised in Musgrave I fails for two reasons. First, it is not clear that Musgrave would have been required to implead all of the lot owners for the court in Musgrave I to render the declarations he requested in Musgrave II. When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. Tex. Civ. Prac. & Rem.Code Ann. § 37.006(a) (Vernon 1997). A declaration does not prejudice the rights of a person not a party to the proceeding. *Id.* The question of joinder under Tex.R. Civ. P. 39 as applied to the declaratory judgment act has been interpreted as providing discretionary authority to the trial court to refuse to render a declaratory judgment when the decree would not terminate the uncertainty or controversy giving rise to the proceeding. Tex. Civ. Prac. & Rem.Code Ann. § 37.008 (Vernon 1986); Tex.R. Civ. P. 39(b); *Caldwell v. Callender Lake Prop. Owners Improvement Ass'n*, 888 S.W.2d 903, 907 (Tex.App.-Texarkana 1994, writ denied) (court had jurisdiction to grant summary judgment on Association's counterclaim against lot owners regarding deed restrictions although not all lot owners were joined). Second, the Texas Rules of Civil Procedure provide for joining parties, do not set a limit on how many may be added to a suit, and provide flexibility to the trial court regarding how to conduct cases in the most efficient manner. Therefore, it is not likely that the addition of parties to Musgrave I would have created an inconvenient trial unit.

Musgrave also complains of the movants' contradictory arguments: first, that his claims should not be considered in Musgrave I because not all necessary parties were joined; and second, that his claims could not be considered in Musgrave II because he should have raised them in Musgrave I. While the parties' expectations are to be considered under the transactional approach to res judicata, *see Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 752 (Tex.App.-San Antonio 1998, no pet.) (party taking action assuming separate trials demonstrated that single trial unit did not conform to her expectations); *Jones v. Nightingale*, 900 S.W.2d 87, 89–90 (Tex.App.-San Antonio 1995, writ ref'd) (pleading relying on both negligence and contract theories to recover for injuries stemming from accident demonstrated party's expectation that claims formed a trial unit), there was no indication that trying the claims in one suit, with the proper parties joined, would have been contrary to the Musgrave I plaintiffs' expectations. Because Musgrave raised claims in Musgrave I that involved consideration of both the extent of Musgrave's affirmative obligations and the limits of the lot owners' rights and could have required the joinder of all of the lot owners subject to the court's discretion, except for the fact that he had filed them in Musgrave II, there is no indication that joinder of these additional claims would have been contrary to Musgrave's expectations.

Although we find that the claims arise out of the same transaction that was the subject matter of the prior claims, the movants did not provide summary judgment proof that Musgrave's claims in Musgrave II were mature during Musgrave I, and res judicata does not apply to claims that are not mature at the time of the prior proceeding. *See Trinity Universal Ins. Co. v. Sweatt,* 978 S.W.2d 267, 271 (Tex.App.-Fort Worth 1998, no pet.). Although there were some vague statements in the movants' pleadings pertinent to maturity, pleadings are not summary judgment proof. *See Laidlaw Waste Sys., Inc. v. City of Wilmer,* 904 S.W.2d 656, 661 (Tex.1995). The live pleadings of Musgrave I were entered as summary judgment proof, and we look to the pleadings of Musgrave II only to compare the claims and issues raised, not to determine the truth of the statements made therein.

Musgrave's claims would have matured only when acts making the controversies live had occurred. *See Conte v. Greater Houston Bank,* 641 S.W.2d 411, 414 (Tex. App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). Musgrave's request regarding the extent of his obligation was not limited to a particular set of facts or an actual justiciable controversy. Thus, there were no facts about which the movants could have provided proof of maturity. Although the remainder of Musgrave's claims did state actual controversies, there was no summary judgment proof to establish that the claims were mature at the time of the prior litigation. Therefore, summary judgment was improper regarding all of Musgrave's claims.

Musgrave argues that what applies to him should also apply to Pinebrook because Pinebrook succeeded to his interests. *See Handel v. Long Trusts,* 757 S.W.2d 848, 856 (Tex.App.-Texarkana 1988, no writ). Thus, Musgrave argues that although Pinebrook did not appeal the dismissal, if the judgment is reversed as to Musgrave, it should also be reversed as to Pinebrook. Following the reasoning in *Handel,* because Pinebrook succeeded to Musgrave's interests, the rights of the appealing and nonappealing parties are so interwoven as to require them to be treated alike. The summary judgment is reversed as to Pinebrook as it is to Musgrave.

We reverse the summary judgment as to both Musgrave and Pinebrook and remand the cause to the trial court for trial.