**Reverse and Remand in part; Affirm in part; and Opinion Filed December 13, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01387-CV

### TOBY M. FUHRMANN, BRIDGETT L. KIRKPATRICK, KAREN E. DERRICK, AND MELVIN MCDANIEL, Appellants
### V.
### C & J GRAY INVESTMENTS PARTNERS, LTD., Appellee

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-13-0203**

## MEMORANDUM OPINION
Before Justices Fillmore, Brown, and Richter[1]
Opinion by Justice Fillmore

Toby M. Furhmann, Bridgett L. Kirkpatrick, Karen E. Derrick, and Melvin McDaniel appeal the trial court's grant of summary judgment declaring that C & J Gray Investments Partners, Ltd. (C & J Gray) owns the mineral estate associated with approximately 212 acres of land in Grayson County, Texas, and awarding C & J Gray attorneys' fees. In nine issues, appellants contend (1) the trial court did not have jurisdiction to grant a trespass-to-try-title judgment without pleadings asserting a trespass-to-try-title cause of action; (2) the trial court erred by overruling appellants' objections to C & J Gray's summary judgment evidence; (3) the summary judgment evidence conclusively established appellants own the mineral estate and

---

[1] The Hon. Martin Richter, Justice, Assigned.

there is no viable legal theory supporting the trial court's grant of C & J Gray's motion for summary judgment and denial of appellants' motion for summary judgment; (4) the trial court erred by applying the real estate statute of limitations to a non-possessory interest and the evidence did not conclusively establish that C & J Gray acquired title to the mineral estate by adverse possession; (5) the trial court erred by determining appellants' claims were barred by either res judicata or collateral estoppel; and (6) there is neither a legal basis nor conclusive evidence to support the trial court's award of attorneys' fees to C & J Gray. We reverse that portion of the trial court's judgment awarding C & J Gray attorneys' fees and remand that issue to the trial court for further proceedings. We affirm the trial court's judgment in all other respects.

## Background[2]

This case involves approximately 212 acres of land in Grayson County, Texas (the Property), and the associated mineral estate. As relevant to this appeal, on April 7, 1959, N.H. and Maude Hayes[3] acquired 222.513 acres of land in Grayson County. Reserved from the conveyance was the ownership of two-thirds of the mineral estate "for a period of twenty-five (25) years . . . and so long thereafter as oil, gas or other minerals may be continuously produced from said property in paying quantities." N.H. and Maude conveyed the Property to John L. and Anna M. Hayes on December 16, 1975, without reserving any ownership of the mineral estate. Because there was no production of oil, gas, or other minerals in "paying quantities," the ownership of the mineral estate vested in John and Anna on April 7, 1984. John and Anna and entered into an oil, gas, and mineral lease with Dusty Hogenson on March 23, 1989. Pursuant to

---

[2] The facts are taken from the parties' pleadings and summary judgment evidence and are largely undisputed.

[3] Because a number of individuals named in this opinion have the same surnames, we use first names, where necessary, for the sake of clarity.

–2–

that lease, oil or gas production began on the Property and was ongoing at the time of the litigation in the trial court.

On December 21, 1993, John and Anna created the Hayes Family Charitable Remainder Unitrust. John and Anna were the primary beneficiaries of the Trust during their lifetimes. Following the death of both John and Anna, the Trust was required to distribute its assets equally to the Wilson N. Jones Memorial Hospital Foundation (the Foundation) and St. Mary's Catholic Church (St. Mary's). John and Anna executed a deed on February 9, 1994, that conveyed the Property to the Trust.[4] In the deed, John and Anna, as grantors,

> [R]eserved unto Grantors, until the death of both Grantors, all oil, gas and other minerals in, on or under the subject property, at which time Grantors' interest in the oil, gas and other minerals so reserved shall past [sic] to and vest in the owner of the surface estate of the property.

On August 4, 1994, the Trust conveyed the Property to Jerry L. Gray, who was a member of the Foundation's Board, and his wife, Cathy A. Gray. The deed to the Grays stated:

> Further, Grantor does convey Grantor's future remainder interest in and to those interests reserved by John L. Hayes and wife Anna M. Hayes in a warranty deed dated February 9, 1994, to Texas Commerce Bank, N.A., Trustee of the Hayes Family Charitable Remainder Trust as recorded in Volume 2318, Page 937, in which John L. Hayes and wife Anna M. Hayes recited "reservations from and exceptions to conveyance and warranties: Grantors reserve unto Grantors, until the death of both Grantors, all oil, gas and other minerals in, on or under the subject property, at which time Grantors' interest in the oil, gas and other minerals so reserved shall pass to and vest in the owner of the surface estate of the property." It is the intention of the Grantor and Grantee that upon the death of John L. Hayes and wife, Anna M. Hayes that the mineral interests so reserved will vest in the Grantees JERRY L. GRAY and wife CATHY ANN GRAY.

On September 30, 1994, John executed a Last Will and Testament.[5] After John's death on March 27, 1995, Anna offered the will for probate and was named the independent executor

---

[4] At some point prior to the conveyance of the Property to the Trust, John and Anna conveyed approximately four acres of the original 222.513 acres to one individual and approximately five and a half acres of the original 222.513 acres to another individual. The approximately nine and a half acres, and the associated mineral estate, are not at issue in this appeal.

[5] This document is not in the record.

of John's estate. Anna, individually and as the executer of John's estate, subsequently sued Alliance Trust Company (ATC), individually and as trustee of the Trust, the Foundation, St. Mary's, and the Grays in the 15th Judicial District Court in Grayson County. Anna alleged both she and John had emotional problems that required treatment by mental health providers and, in the years leading up to 1994, John was, on occasion, hospitalized at Wilson N. Jones Memorial Hospital. During one of his last hospitalizations, an official of the Foundation convinced John and Anna to convey all their property to a trustee for the benefit, in part, of the Foundation.

Anna alleged that neither she nor John were competent to enter into the trust agreement and pleaded claims for fraud, negligence, violations of the Deceptive Trade Practices Act, and breach of fiduciary duty. She also asserted that, because Jerry was a member of the Board of Foundation, the conveyance of the Property by the Trust to the Grays constituted self-dealing, as well as constructive and actual fraud. Anna alleged the trust instrument was void or voidable and requested damages in an unspecified amount.

The parties agreed to settle Anna's claims. In the Compromise Settlement Agreement (CSA), the parties agreed that Anna had raised "significant questions" about "the intention and understanding of John L. Hayes and wife, Anna M. Hayes, regarding their execution and funding of the Trust and the sale of the Property by ATC to the Grays, resulting in bona fide disputes and controversies" between the parties. The parties agreed to give effect to John's testamentary plan, as set out in his will, "as though the Trust had not been established." Anna agreed to submit a petition to the 15th Judicial District Court requesting (1) a judicial ratification of all actions taken by ATC as trustee of the Trust, including the sale of the Property to the Grays; (2) approval of ATC's resignation as trustee; and (3) the judicial termination of the Trust. The parties agreed the promissory note signed by the Grays for the purchase of the Property would be sold to the Bank

of Oklahoma, N.A. After payment of taxes and charges and $5,000 to St. Mary's, the corpus of the Trust would be distributed to Anna. ATC also agreed to pay $10,000 to St. Mary's .

On August 8, 1996, the trial judge of the 15th Judicial District Court signed both an order approving the CSA and a final judgment. The final judgment noted that "[a]ll of the necessary parties are properly before the Court and this Court has jurisdiction of the parties and of the subject matter of this proceeding." The final judgment judicially ratified and approved ATC's conveyance of the Property to the Grays, granted Anna's petition to terminate the Trust, and accepted and approved ATC's resignation as trustee.

The Grays sold the Property to Stephen and Linda Speir and Hollis and Gilda Stanbery on March 17, 2000. The deed conveying the Property was subject to the "mineral reservation set forth on Exhibit B attached [t]hereto and for all purposes made a part [t]hereof." Exhibit B to the deed reserved "[a]ny and all prior and valid outstanding reservations or conveyances of oil, gas, and/or other minerals, building restrictions, easement, and oil and gas leases, of every kind and nature heretofore conveyed, excepted or reserved, as may appear of record in the records of Grayson County, Texas, as of the date of this deed," and stated:

> Oil, gas and mineral estate is vested in John L. Hayes and wife, Anna M. Hayes, by deed from N.H. Hayes and wife dated December 16, 1975, of record in Vol. 1329, page 705, Deed Records, Grayson County, Texas, with such mineral estate being further subject to the reservation made by John L. Hayes and wife, Anna M. Hayes, in Warranty Deed dated February 9, 1994, to Texas Commerce Bank, N.A., Trustee of the Hayes Family Charitable Remainder Unitrust, as recorded in Vol. 2318, page 937, in which John L. Hayes and wife, Anna M. Hayes, recited "'reservations from and exceptions to conveyance and warranties: Grantors reserve unto Grantors, until the death of both Grantors, all oil, gas and other minerals, in, on or under the subject property, at which time Grantors' interest in the oil, gas and other minerals so reserved shall pass to and vest in the owner of the surface estate of the property.' It is the intention of the Grantor and Grantee that upon the death of John L. Hayes and wife, Anna M. Hayes that the mineral interests so reserved will vest in the Grantees Jerry L. Gray and wife Cathy Ann Gray."

The Speirs and the Stanberys sold seventy-five acres of the Property to Derrick on May 30, 2000, twenty-five acres of the Property to Roger and Gracie Whitmire on June 16, 2000, and the remaining approximately 112 acres of the Property to Furhmann and Kirkpatrick on September 1, 2000. The deeds to Derrick and the Whitmires did not specifically reference any mineral rights, but stated each conveyance was made subject to "[a]ny and all easements, restrictions, covenants, conditions and reservations of record." The deed to Furhmann and Kirkpatrick contained the same reservation regarding the conveyance from the Trust to the Grays as in the March 17, 2000 deed conveying the Property to the Speirs and the Stanberys. Anna died on November 12, 2002.

On May 10, 2005, the Grays conveyed "any and all interest" they had in the "oil, gas and other minerals in and to" the Property to C & J Gray. The Whitmires conveyed the twenty-five acres they owned to Speir Investments, Ltd. on May 24, 2005. The deed conveying the twenty-five acres to Speir Investments did not specifically reference any mineral rights, but was made subject to "[a]ny and all easements, restrictions, covenants, conditions and reservations of record." Speir Investments sold the twenty-five acres to Maria Hite and Stacy Kreitel on May 2, 2008. In the deed conveying the twenty-five acres, Speir Investments excepted from the conveyance "such valid mineral and royalty interest in said land as may appear of record in the office of the County Clerk of Grayson County, Texas," and "any and all remaining interest in the oil, gas and other minerals in and under and that may be produced from said land[.]" On August 10, 2009, Derrick conveyed sixty acres from the seventy-five acres she owned to McDaniel. The conveyance was subject to "all outstanding minerals, mineral leases, restriction, covenants, conditions and easements" to the extent they were still in force and effect and shown of record.

Although the record is not completely clear, in August 2012, Jetta Energy Resources, LLC evidently wanted to amend the oil, gas, and mineral lease signed by John and Anna in 1989.

In an incomplete document dated August 3, 2012, with a handwritten note stating that it is part of an "Attorneys Title of [sic] Opinion," an unidentified author stated that, when Anna died on November 12, 2002, the mineral estate vested in Derrick, McDaniel, Speir Investments, Furhmann, and Kirkpatrick, the owners of the surface estate on that date or their successors. Furhmann and Kirkpatrick signed an amendment to the oil, gas, and mineral lease effective September 5, 2012.

On January 18, 2013, C & J Gray sued Speir Investments, Furhmann, Kirkpatrick, Derrick, and McDaniel requesting a declaratory judgment to quiet title. C & J Gray specifically alleged Speir Investments' reservation of a mineral estate in the deed to Hite and Kreitel constituted a cloud on its title to the mineral estate and requested declarations that the deed was invalid and unenforceable as to the purported reservation of mineral interests in the Property and that C & J Gray "owns all of the mineral interest in the Property." C & J Gray requested a judgment against the "defendants" for attorneys' fees and costs of suit. Alternatively, C & J Gray pleaded a cause of action for slander of title against all the defendants, asserting a sale of the mineral estate had been rescinded and it was unable to sell the mineral estate as a result of Speir Investments' publication of the reservation of a right to the mineral estate "as well as any other adverse claims of ownership interests in the minerals of the Property to be made by the other named Defendants." C & J Gray filed a supplemental petition in which it asserted appellants' and Speir Investments' claims to own the mineral estate were barred by res judicata and collateral estoppel or, alternatively, C & J Gray had acquired ownership of the mineral estate by adverse possession.

Appellants filed a counterclaim, requesting a declaratory judgment that ownership of the mineral estate vested in them on the day Anna died; the deed from the Grays to the Speirs and the Stanberys did not reserve any interest in the mineral estate, if any such interest was owned by

the Grays; and Furhmann, Kirkpatrick, Derrick, and McDaniel owned their respective portions of the mineral estate. Appellants also asserted a trespass to try title cause of action against C & J Gray.

C & J Gray and appellants filed competing motions for summary judgment on the issue of the ownership of the mineral estate, as well as objections to some of the summary judgment evidence. The trial court overruled appellants' objections to C & J Gray's summary judgment evidence, denied appellants' motion for summary judgment, granted C & J Gray's motion for summary judgment, and declared that (1) title and ownership of the entire mineral estate of the Property is currently vested in C & J Gray, and (2) title to the mineral estate vested in C & J Gray's predecessor in title on the death of John and Anna. The trial court also determined the vesting of the mineral estate in the Grays, who were C & J Gray's predecessors in interest, was judicially confirmed by the final judgment in the prior litigation between Anna, on the one hand, and ATC, the Foundation, St. Mary's, and the Grays, on the other hand. Alternatively, the trial court determined C & J Gray had acquired title to the mineral estate by adverse possession. The trial court finally determined that the reservation of a mineral interest by Speir Investments in the deed to Hite and Kreitel constituted a cloud on C & J Gray's title to the mineral estate.

Appellants appealed the trial court's order. We dismissed the appeal for lack of jurisdiction. C & J Gray then dismissed its claims against Speir Investments and filed a motion for summary judgment on its claim against appellants for attorneys' fees under the declaratory judgment act. The trial court granted C & J Gray's motion and awarded it $45,900 in attorneys' fees as well as contingent fees on appeal. Appellants filed this appeal.

**Jurisdiction**

In their second issue, appellants contend C & J Gray failed to invoke the trial court's in rem jurisdiction to vest and divest title to, and possession of, the mineral estate by failing to

plead a trespass to try title cause of action. Appellants specifically argue that, because C & J Gray could have asserted a claim for trespass to try title, it was precluded from asserting a claim under the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001—.001 (West 2015) (the DJA).

Whether a trial court has subject matter jurisdiction depends on whether a justiciable controversy exists between the parties. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Bowman v. The Bank of N.Y. Mellon Trust Co., N.A.*, No. 05-13-01684-CV, 2016 WL 258765, at *3 (Tex. App.—Dallas Jan. 21, 2016, pet. denied) (mem. op.). C & J Gray filed this lawsuit, alleging there was a dispute over the ownership of the mineral estate and asserting causes of action under the DJA and for slander of title. Appellants filed a counterclaim, seeking declaratory relief over the same dispute and asserting a claim for trespass to try title. We conclude there was a justiciable controversy between the parties.

A district court has jurisdiction to resolve a title dispute involving an interest in real estate, *see Coughran v. Nunez*, 133 Tex. 303, 307–09, 127 S.W.2d 885, 887–88 (1939); *Merit Mgmt. Partners I. L.P. v. Noelke*, 266 S.W.3d 637, 647 (Tex. App.—Austin 2008, no pet.); *see also* TEX. CONST. art. 5, § 8, and "does not lack jurisdiction over a property dispute that was erroneously brought as a declaratory judgment action." *Bowman*, 2016 WL 258765, at *3 (citing *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 726 (Tex. App.—Eastland 2011, pet. denied) ("The trial court does not lose jurisdiction if a title dispute is erroneously filed as a declaratory judgment action and may properly award declaratory relief and attorney's fees if no objection is raised.")). Appellants did not object to C & J Gray seeking declaratory relief regarding the title to the mineral estate and sought such relief themselves in their counterclaim. Accordingly, the trial court had jurisdiction to resolve the dispute through declaratory relief. *See*

*Bowman*, 2016 WL 258765, at \*3; *Teon Mgmt., LLC*, 357 S.W.3d at 726. We resolve appellants' second issue against them.

### Evidentiary Issues

In their eighth issue, appellants complain the trial court erred by overruling their objections to some of the summary judgment evidence relied upon by C & J Gray. Appellants' entire argument in support of this issue consists of a list of the exhibits to which they objected and the objection or objections they asserted as to each exhibit.

The Texas Rules of Appellate Procedure control the required contents and organization of an appellant's brief. *See* TEX. R. APP. P. 38.1; *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). An appellant's brief must concisely state all issues or points presented for review and, among other things, must contain a clear, concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). We may not speculate as to the substance of the specific issues asserted by an appellant and may not make a party's argument for him. *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). And we have no duty to perform an independent review of the record and the applicable law to determine if the trial court erred. *Strange*, 126 S.W.3d at 678; *see also Lau v. Reeder*, No. 05-14-01459-CV, 2016 WL 4371813, at \*2 (Tex. App.—Dallas Aug. 16, 2016, no pet. h.) (mem. op.). An appellant's failure to cite legal authority or provide substantive analysis of a legal issue results in waiver of the complaint. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.).

Appellants have failed to provide any substantive analysis as to how a specific objection applies to any exhibit, how the trial court abused its discretion by overruling any objection, or

how they were harmed by the trial court's consideration of any exhibit. *See* TEX. R. APP. P. 44.1(a); *Singh v. Skibicki*, No. 01-14-00825-CV, 2015 WL 7785566, at *5 (Tex. App.—Houston [1st Dist.] Dec. 3, 2015, no pet.) (mem. op.). Accordingly, appellants waived this issue due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *Singh*, 2015 WL 7785566, at *5. We resolve appellants' eighth issue against them.

## Summary Judgment

In their first and third through seventh issues, appellants contend the trial court erred by granting C & J Gray's motion for summary judgment and denying appellants' motion for summary judgment on the issue of title to the mineral estate. Appellants specifically argue the evidence conclusively established they owned the mineral estate and there was no viable legal theory to support the trial court's granting of C & J Gray's motion for summary judgment and denial of appellants' motion for summary judgment; the evidence conclusively established that appellants have the superior record chain of title to the minerals reserved by the common source of title; the real estate statutes of limitations do not apply to the ownership of royalty proceeds or reverter interests and the evidence did not conclusively establish that C & J Gray acquired title to the mineral estate by adverse possession; and the evidence failed to conclusively establish that appellants' claims were barred by either res judicata or collateral estoppel.

### Standard of Review

We review a trial court's grant or denial of summary judgment de novo. *Sw. Bell Tele., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). To prevail on a traditional motion for summary judgment, the moving party must prove there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When competing motions for summary judgment are filed, and one is granted and the other denied, we consider the summary

–11–

judgment evidence presented by both sides, determine all questions presented and, if the trial court erred, render the judgment the trial court should have rendered. *Emmett*, 459 S.W.3d at 583 (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

*Res judicata and Collateral Estoppel*

In their sixth and seventh issues, appellants assert the trial court erred by granting summary judgment on the grounds that appellants' claims relating to the ownership of the mineral estate were barred by either res judicata or collateral estoppel. Appellants specifically argue these doctrines do not apply because appellants were not parties to the final judgment in the prior litigation between Anna, ATC, the Foundation, St. Mary's, and the Grays and the prior litigation did not involve "mineral issues."

An appellant must challenge every possible ground on which the trial court granted summary judgment. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Ganter v. Indep. Bank*, No. 05-15-00413-CV, 2016 WL 4376284, at *7 (Tex. App.—Dallas Aug. 16, 2016, no pet. h.) (mem. op.). If an appellant fails to do so, the appellate court must affirm the summary judgment based on the unchallenged ground. *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied).

In their first issue, appellants raise a general complaint that the trial court's rulings on the parties' motions for summary judgment were erroneous. A general challenge to the grant of summary judgment is sufficient to preserve all possible grounds on which summary judgment could have been denied, *Plexchem Int'l, Inc. v. Harris Cty. Appraisal Dist.*, 922 S.W.2d 930, 930–31 (Tex. 1996) (per curiam), and "to allow argument as to all the possible grounds upon which summary judgment should have been denied." *Malooly*, 461 S.W.2d at 121. However, an appellant asserting in a general appellate issue that the summary judgment was erroneous "must also support that issue with argument challenging all possible grounds on which the summary

judgment could have been granted or a reviewing court will affirm the summary judgment." *Ganter*, 2016 WL 4376284, at *7 (citing *Jarvis*, 298 S.W.3d at 313); *see also Rollins v. Denton Cty.*, No. 02-14-00312-CV, 2015 WL 7817357, at *2 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.) ("When an argument is not made challenging every ground on which the summary judgment could be based, we are required to affirm the summary judgment, regardless of the merits of the unchallenged ground.").

In their sixth and seventh issues, appellants challenged the trial court's grant of summary judgment based on res judicata or collateral estoppel. In their opening brief, appellants entire argument on these issues is:

> The summary judgment evidence shows that there was an in personam suit that did not include appellants between parties about the Trust. CR 297, 658. There was never any citation issued, served, or returned. There was no citation by publication, no attorney ad litem and no in rem proceeding. A declaratory judgment act is an in personam action. TEX. CIV. PRAC. & REM. CODE ANN. § 37.006; *In [r]e Thompson*, 330 S.W.3d 411, 416 (Tex. App.—Austin 2010[,] no pet.). Only the parties in the proceeding are bound thereby. There is no evidence that the declaratory judgment was ever filed in the real property records of Grayson County, Texas. The required elements of proof of res judicata are:
>
>> "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Steger v. Muenster Drilling Co., Inc.*, 134 S.W.3d 359, 368 (Tex. App.—Fort Worth 2003[,] pet. denied).

Appellants failed to provide any substantive argument that the trial court erred by granting summary judgment on the ground appellants were precluded by collateral estoppel from relitigating the facts underlying C & J Gray's claim to ownership of the mineral estate.[6] *See*

---

[6] In their reply brief, appellants challenged the trial court's grant of summary judgment on the ground that appellants were precluded by the doctrine of collateral estoppel from relitigating the facts underlying C & J Gray's claim to ownership of the mineral estate. Although we liberally construe issues on appeal, we do not create arguments that could have been raised in the opening brief but were not. *Powell v. Knipp*. 479 S.W.3d 394, 408 (Tex. App.—Dallas 2015, pet. denied). "Issues raised for the first time in a reply brief are ordinarily waived and may not be construed by an appellate court." *Id.*

–13–

TEX. R. APP. P. 38.1(f) ("brief must state concisely all issues or points presented for review"). Because appellants failed to challenge in their opening brief the trial court's grant of summary judgment on the ground appellants were precluded by collateral estoppel from litigating their claims in this case, we must affirm the summary judgment on this unchallenged ground. *See Dickson v. Am. Elec. Power, Inc.*, No. 05-14-00690-CV, 2016 WL 192570, at *2 (Tex. App.— Dallas Jan. 15, 2016, pet. denied) (mem. op.); *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.) ("[A] reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted.").

However, even if we construe appellants' argument in their sixth and seventh issues as challenging not only the trial court's grant of summary judgment on the ground appellants' claims are barred by res judicata but also on the ground appellants' claims are barred by collateral estoppel, we conclude the trial court properly granted summary judgment on the ground the appellants' claims are barred by res judicata. The doctrine of res judicata is the generic term for a group of related concepts concerning effects given final judgments. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992) (citing *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex. 1982)). Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata) and (2) issue preclusion (also known as collateral estoppel). *Id.*

Res judicata applies to an agreed judgment. *Smith v. Huston*, 251 S.W.3d 808, 825 (Tex. App.—Fort Worth 2008, pet. denied). Res judicata bars the relitigation of claims that have been finally adjudicated as well as causes of action or defenses which arise out of the same subject matter and which might have been litigated in the prior action. *Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001) (per curiam); *Barr*, 837 S.W.2d at 628. "The

doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). A party relying on res judicata to bar a claim must prove (1) a prior final determination on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them, and (3) a second action based on the same claims as were or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We construe appellants' brief as contending C & J Gray failed to conclusively establish the second and third elements.

As to the second element, appellants were not parties to the litigation between Anna, ATC, the Foundation, St. Mary's, and the Grays. Generally, a person is not bound by a judgment in a suit to which he was not a party. TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). "The doctrine of res judicata creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit." *Amstadt*, 919 S.W.2d at 652–53; *see also Porterfield v. Cenlar FSB*, No. 05-14-00663-CV, 2016 WL 1019359, at *5 (Tex. App.—Dallas Mar. 15, 2015, no pet.) (mem. op.). "Privity does not exist merely when persons are interested in the same question, but requires an identity of interest in the legal right actually asserted." *Ganter*, 2016 WL 4376284, at *13 (quoting *Tex. Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989)). A person may be in privity with a party in at least three ways: (1) he can control an action even though not a party to it; (2) his interests can be represented by a party to the action; or (3) he can be a successor in interest deriving his claim through a party to the prior action. *Amstadt*, 919 S.W.2d at 653; *Ganter*, 2016 WL 4376284, at *13. Appellants' claims to ownership of the mineral estate are derived through Anna, who was a

party to the prior litigation. Accordingly, the summary judgment evidence conclusively established the privity required for res judicata to apply.

As to the third element, whether this lawsuit is based on the same claims as were or could have been raised in the prior litigation, Texas follows the transactional approach under which a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and the subject matter could have been litigated in the prior suit. *Daccach*, 217 S.W.3d at 449. "[A] final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Id.* (quoting *Barr*, 837 S.W.2d at 631). In determining the "subject matter" or "transaction" of the prior suit, we analyze "the factual matters that make up the gist of the complaint, without regard to the form of action." *Id.* (quoting *Barr*, 837 S.W.2d at 630). This analysis must be done "pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *Barr*, 837 S.W.2d at 631; RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)). "The main concern is whether the cases share the same nucleus of operative facts." *Thompson v. Weaver*, 429 S.W.3d 897, 902–03 (Tex. App.—Tyler 2014, no pet.); *see also Hill v. Tx-An Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 426 (Tex. App.—Dallas 2014, no pet.) (concluding claims that arise from same operative facts form a "convenient trial unit" and their treatment as trial unit conforms with parties' expectations). "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Daccach.*, 217 S.W.3d at 449 (quoting *Barr*, 837 S.W.2d at 630).

In the prior litigation, Anna sued ATC, individually and as trustee for the Trust, the Foundation, St. Mary's, and the Grays, alleging the defendants' improper conduct caused her and

–16–

John to establish the Trust when they were not competent to do so. Anna asserted claims based on fraud, negligence, breach of the DTPA, and breach of fiduciary duty. Anna was aware the Trust had conveyed the Property to the Grays and specifically alleged the conveyance constituted self-dealing and actual or constructive fraud.

Anna's claims in the prior litigation were based on facts surrounding the creation of the Trust, the conveyance of the Property to the Trust, and the subsequent conveyance by the Trust to the Grays. Appellants' claims of mineral estate ownership are based on this same nucleus of operative facts. In its deed to the Grays, the Trust stated John and Anna had conveyed to the Trust a remainder interest in the minerals and its intent was for that interest to vest in the Grays on Anna's death. If Anna disputed that she and John conveyed a remainder interest in the minerals to the Trust, she could have sought resolution of that issue in the prior litigation. Rather than doing so, Anna agreed to settle her claims and to pursue a final judgment from the 15th Judicial District Court ratifying and affirming the Trust's conveyance to the Grays, including the conveyance of the remainder interest in the minerals. We conclude the summary judgment evidence conclusively established appellants' claims relate to the same subject matter as Anna's claims in the prior litigation and should have been litigated in that suit.[7]

*Conclusion*

Because appellants failed to challenge the trial court's grant of summary judgment on the ground that appellants' claims are barred by collateral estoppel, we affirm the trial court's judgment on the unchallenged ground. Further, even if appellants' argument the trial court erred by granting summary judgment on the ground appellants' claims are barred by res judicata is

---

[7] Appellants also assert in one sentence that, "There is no evidence that the declaratory judgment was ever filed in the real property records of Grayson County, Texas." In their opening brief, appellants provide no substantive analysis relating to this complaint and, therefore, have waived the argument on appeal. *See* TEX. R. APP. P. 38.1; *Powell*, 479 S.W.3d at 408. However, to the extent appellants are complaining of lack of notice of the final judgment, we note the conveyance of the remainder interest in the minerals from the Trust to the Grays was contained in deeds filed in the Grayson County records, including the deeds from the Grays to the Speirs and the Stanberys and from the Speirs and the Stanberys to Furhmann and Kirkpatrick, and placed appellants on notice of the Grays' claim to ownership of the mineral estate.

–17–

construed to encompass collateral estoppel, the evidence conclusively established that appellants' claims are barred. We resolve appellants' first, sixth, and seventh issues against them. Accordingly, we need not address appellants' third through fifth issues. *See* TEX. R. APP. P. 47.1.

**Attorneys' Fees**

In their ninth issue, appellants argue the trial court erred by granting summary judgment on C & J Gray's claim for attorneys' fees under the DJA because there was no legal basis for the award of fees, C & J Gray failed to allocate the fees among its causes of action, they raised objections to C & J Gray's summary judgment evidence, and there was no affirmative cause of action against appellants to support the award of attorneys' fees.

*Applicable Facts*

C & J Gray moved for summary judgment on the issue of whether it was entitled to recover attorneys' fees under the DJA and attached as summary judgment evidence the trial court's order declaring C & J Gray owned the mineral estate; an affidavit from C & J's attorney, Scott Pelley, in which he set out his experience, his relationship with C & J Gray, his hourly rate, the number of hours he worked on the case, and the type of work he performed; and redacted billing statements. Pelley stated that C & J Gray had incurred attorneys' fees of $46,879 and costs and expenses of $1,091.10, for a total of $47,961.10, as of the date the motion for summary judgment was filed. Pelley opined that total fees and expenses through the entry of the requested summary judgment would be $51,000. Pelley stated, "The attorney services and fees charged in this case were necessary, were reasonable, and were properly incurred in both the prosecution and the defense of this declaratory judgment action, and should be awarded pursuant to Chapter 37-Declaratory Judgments of the Civil Practice and Remedies Code." Appellants responded to the motion, but filed no controverting summary judgment evidence.

–18–

At the hearing on C & J Gray's motion for summary judgment, Pelley represented to the trial court that C & J Gray was no longer pursuing its claims for attorneys' fees totaling $5,100 for work performed on January 7, 2013, January 10, 2013, January 16, 2013, and January 17, 2013, that specifically related to claims for trespass to try title and slander of title. The trial court granted summary judgment and awarded C & J Gray attorneys' fees of $45,900, representing "the segregated amount of attorney's fees incurred by [C & J Gray] in pursuit of the Declaratory Judgments relief granted to [C & J Gray] by the Court in its construction of the various deeds and other instruments to determine the rights of the various parties."

*Availability of Fees*

Appellants first assert C & J Gray failed to show it was entitled to recover attorneys' fees because it was required to bring a claim for trespass to try title or to quiet title, rather than a claim for declaratory relief, and because it failed in its petition to assert an affirmative cause of action against appellants.

As we concluded in our discussion of appellants' second issue, the trial court had jurisdiction over C & J Gray's and appellants' requests for declaratory relief. Both C & J Gray and appellants filed a motion for summary judgment on their requests for declaratory relief and requested the trial court award attorneys' fees. Appellants responded to C & J Gray's motion for summary judgment and did not argue that C & J Gray was limited to a trespass to try title claim and was not entitled to declaratory relief. After the trial court granted C & J Gray's motion for summary judgment and declared that C & J Gray was the owner of the mineral estate, appellants filed a motion for new trial, contending for the first time that C & J Gray could not bring a claim for declaratory relief. Under these circumstances, the trial court could properly consider, and award, C & J Gray attorneys' fees under the DJA. *See Teon Mgmt., LLC*, 357 S.W.3d at 726.

–19–

Appellants also assert that C & J Gray was not entitled to recover attorneys' fees because it failed to assert an affirmative cause of action against appellants. Appellants specifically argue that C & J Gray's request for declaratory relief and its slander of title claim in its original petition related only to the deed from Speir Investments to Hite and Kreitel and did not assert a claim against appellants. C & J Gray contended in its original petition that the deed from Speir Investments to Hite and Kreitel constituted a cloud on C & J Gray's title to the mineral estate. However, it not only sought declarations that the Speir Investments deed was a cloud on its title and was invalid and unenforceable, but also that it "owns all of the mineral interest in the Property." C & J Gray requested judgment against the "defendants" for attorneys' fees. As to its alternative pleading for slander of title, C & J Gray alleged the deed from Speir Investments to Hite and Kreitel was a slander on its title to the mineral estate, but also alleged that it had been unable to sell the mineral estate due to "any other adverse claims of ownership interest in the minerals of the Property to be made by the other named Defendants."

Further, C & J Gray filed a supplemental petition alleging that the case "require[d] the declaration of the rights and obligations of the parties relating to the ownership of certain mineral interests located in Grayson County, Texas." C & J Gray alleged the "defendants" had made claims of ownership of the mineral estate and that these claims were barred by res judicata or collateral estoppel or, alternatively, that C & J Gray had acquired ownership of the mineral estate by adverse possession. C & J Gray requested the trial court declare the "defendants'" claims were barred or that C & J Gray had acquired title to the mineral estate by adverse possession.

Generally, a pleading must give fair and adequate notice to the trial court and to the opposing party of the nature of the cause of action asserted. *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981); *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979). Special exceptions serve "to compel clarification of pleadings when the pleadings are not clear or

–20–

sufficiently specific or fail to plead a cause of action." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). "Absent special exceptions, we construe a petition liberally in favor of the pleader." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 81 (Tex. 2000); *see also Dallas Area Rapid Transit v. Morris*, 434 S.W.3d 752, 761 (Tex. App.— Dallas 2014, pet. denied).

Appellants did not specially except to either the original or supplemental petition. Construing C & J Gray's petition and supplemental petition liberally, we conclude it alleged there was a dispute between it and appellants over the ownership of the mineral estate, sought a declaration that it owned the mineral estate, and requested an award of attorneys' fees from all the defendants, including appellants.

*Objections to Summary Judgment Evidence*

Appellants also note that they objected on a number of grounds to Pelley's affidavit regarding the fees incurred by C & J Gray in this case. In their brief, appellants simply set out the objections raised without providing any substantive analysis as to how a specific objection applies to the affidavit, how the trial court abused its discretion by overruling any objection, or how they were harmed by the trial court's consideration of any part of the affidavit. *See* TEX. R. APP. P. 44.1(a); *Singh*, 2015 WL 7785566, at *5. Accordingly, appellants waived any complaint regarding the trial court's evidentiary rulings due to inadequate briefing.

*Allocation of Fees*

Appellants finally complain that C & J Gray failed to allocate its attorneys' fees between causes of action and parties. In any proceeding under the DJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The DJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which

–21–

are matters of fact, and to the additional requirements that fees by equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). An award of attorneys' fees in a summary judgment is improper unless the evidence of the reasonableness of the fees is uncontroverted and the amount of the fees is conclusively established. *Myers v. HCB Real Holdings, LLC*, No. 05-13-00113-CV, 2015 WL 2265152, at *7 (Tex. App.—Dallas May 14, 2015, pet. denied) (mem. op.). When the amount of attorneys' fees is not conclusively established, the attorneys' fee question may be severed and remanded for trial. *Id.*

In support of its request for attorneys' fees, C & J Gray submitted Pelley's affidavit stating that $51,000 was a reasonable and necessary amount of fees "incurred in both the prosecution and the defense of this declaratory judgment action." Appellants submitted no controverting summary judgment evidence as to the amount of fees that were incurred, but complained C & J Gray failed to properly segregate the fees. At the hearing on the motion for summary judgment, C & J Gray, through the argument of counsel, withdrew its request for $5,100 in attorneys' fees because those fees were related to the trespass to try title and slander of title claims, essentially conceding its summary judgment evidence included fees that were not recoverable.[8]

Generally, a party seeking to recover attorneys' fees must "segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). However, "when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991). "[I]t is

---

[8] *See Allen-Pieroni v. Pieroni*, No. 05-15-00774-CV, 2016 WL 4039192, at *3 (Tex. App.—Dallas July 26, 2016, pet. filed) (mem. op.) (claim for slander of title does not support award of attorneys' fees); *I-10 Colony, Inc. v. Lee*, 393 S.W.3d 467, 475 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (attorneys' fees not recoverable on trespass to try title claim).

only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14.

C & J Gray's summary judgment evidence affirmatively demonstrates, and Pelley conceded at the hearing on the motion for summary judgment, that some discrete legal services were rendered only for claims for which attorneys' fees are not recoverable. Further, there is nothing in the summary judgment evidence conclusively establishing that $45,900 was the proper amount of fees for work prosecuting and defending the declaratory judgment claims. Rather, the summary judgment evidence states the proper amount for such work is $51,000, an amount C & J Gray has conceded is incorrect.

Absent conclusive summary judgment evidence of an amount certain, the trial court necessarily made a fact finding when it awarded C & J Gray $45,900 as its reasonable attorneys' fees and costs for work performed on prosecuting and defending the declaratory judgment claims. *See Myers*, 2015 WL 2265152, at *7. "Findings of fact have no place in a summary judgment proceeding." *Id.*; *see also IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997). Because there was no summary judgment conclusively establishing that C & J Gray incurred $45,900 in attorneys' fees relating to the declaratory judgment claims or that such fees and costs were reasonable and necessary, the trial court erred by granting C & J Gray's motion for summary judgment on its entitlement to attorneys' fees pursuant to the DJA. *See Myers*, 2015 WL 2265152, at *7; *Richardson v. SV Almeda I Ltd. P'ship*, No. 01-11-01004-CV, 2013 WL 4680392, at *18–19 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.) ("Because Almeda's summary-judgment evidence shows discrete legal services rendered for some claims for which attorney's fees are unrecoverable, yet does not show segregation of attorney's fees between recoverable and non-recoverable claims, we hold that the trial court

erred in awarding $8,000 in attorney's fees for defending against all of appellants' claims."). We resolve appellants' ninth issue in their favor.

## Conclusion

We reverse the trial court's summary judgment awarding attorneys' fees to C & J Gray and remand the cause to the trial court for further proceedings consistent with this opinion. *Myers*, 2015 WL 2265152, at *7; *Richardson*, 2013 WL 4680392, at *19. We affirm the trial court's judgment in all other respects.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

151387F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TOBY M. FUHRMANN, BRIDGETT L. KIRKPATRICK, KAREN E. DERRICK, AND MELVIN MCDANIEL, Appellants

No. 05-15-01387-CV     V.

C & J GRAY INVESTMENTS PARTNERS, LTD., Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas,
Trial Court Cause No. CV-13-0203.
Opinion delivered by Justice Fillmore,
Justices Brown and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding appellee C & J Gray Investments Partners, Ltd. $45,900 in attorneys' fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with the Court's opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered December 13, 2016